UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| John Albrecht, as Trustee for the Next-of-Kin of Norma Albrecht, deceased,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>Ashokakumar Patel, M.D.; Mayo Clinic; Mayo Clinic Rochester; and Mayo Clinic Rochester d/b/a Mayo Clinic,<br><br>　　　　Defendants. | Case No.:<br><br><br>**COMPLAINT**<br>**AND**<br>**DEMAND FOR JURY TRIAL** |

Plaintiff John Albrecht, as the Trustee for the Next-of-Kin of Norma Albrecht, for his cause of action against the above-named Defendants, states and alleges on information and belief as follows:

**PARTIES, JURISDICTION & VENUE**

**I.**

At all relevant times, Plaintiff John Albrecht and his deceased wife, Norma Albrecht, were husband and wife, and residents of South Dakota. John Albrecht resides at 43484 218th Street, DeSmet, Kingsbury County, South Dakota. On May 30, 2008, Norma Albrecht died as a result of Defendants' medical malpractice.

**II.**

Plaintiff John Albrecht was duly appointed trustee on March 9, 2011 by order of the District Court, Hennepin County, State of Minnesota, to prosecute an action for the wrongful death of his wife, Norma Albrecht, for the benefit of the next-of-kin pursuant to the Minnesota

Wrongful Death Statute, Minn. Stat. § 573.02 *et seq.* A copy of the Order appointing John Albrecht as Trustee is attached as Exhibit A.

### III.

At all relevant times, and on information and belief, Defendant Ashokakumar Patel, M.D. has been a resident of the State of Minnesota and currently resides at 1172 Weatherhill Woods Lane SW, Rochester, Olmsted County, Minnesota. At all relevant times, Defendant Patel has been licensed to practice medicine in the State of Minnesota. Upon information and belief, Defendant Patel holds Minnesota medical license number 31230.

### IV.

At all relevant times, Mayo Clinic, Mayo Clinic Rochester and Mayo Clinic Rochester d/b/a Mayo Clinic ("Mayo") were Minnesota nonprofit corporations, located at 200 First Street Southwest, Rochester, Olmsted County, Minnesota, which operated health care facilities and, in connection therewith, employed the services of physicians, nurses and other health care providers, including Defendant Patel, and held them out and warranted them to the public to be competent, careful and experienced in the care and treatment of patients.

### V.

Jurisdiction is proper in this Court pursuant to 28 U.S.C. §1332. There exists complete diversity of citizenship between Plaintiff and all Defendants and the amount in controversy exclusive of interest and costs far exceeds Seventy-five Thousand Dollars ($75,000).

### VI.

Venue in this district is proper under 28 U.S.C. §1391.

VII.

Upon information and belief, Defendants are subject to personal jurisdiction in this district arising out of their contacts with this district. Moreover, Plaintiff's claims arise out of or are related to Defendants' contacts with this district.

**FACTUAL BACKGROUND**

VIII.

At all relevant times, Defendant Patel was acting within the scope of his employment and/or professional relationship with Defendant Mayo.

IX.

At all relevant times, Defendant Patel and Defendant Mayo had a duty to comply with accepted standards of practice in providing medical care and treatment to Norma Albrecht.

X.

On May 29, 2008, at 8:30 a.m., Norma Albrecht saw Defendant Patel at Defendant Mayo Clinic. According to the Defendants' records, her "CHIEF COMPLAINT/PURPOSE OF VISIT" was "Chronic cough and exertional dyspnea [shortness of breath]." Defendant Patel found Mrs. Albrecht to be a "Pleasant mildly distressed 68-year-old woman with two-months of progressive exertional dyspnea in the setting of presumed subacute bronchitis, reflux and obstructive sleep apnea." Defendant Patel noted that Mrs. Albrecht had "difficulty with full inspiratory maneuver and rare wheeze." Antibiotics improved the productive cough, but the dyspnea persisted. Defendant Patel knew that Mrs. Albrecht's shortness of breath was caused by walking less than two blocks on level ground or one flight of stairs. Defendant Patel indicated

that her pulmonary function studies were normal with room air oxygen at rest 94% and decreased to 89% after only 1.3 minutes of step exercise. Mrs. Albrecht's blood pressure was 105/75 with a heart rate of 100. Defendant Patel's plan included: "#1 Check CT scan of the chest with pulmonary embolism protocol . . . ." Defendant Patel ordered the CT, without pretreatment, to begin "ASAP." The same orders state "Pt waiting in lobby."

## XI.

There is no indication in the records that the ordered CT was performed on May 29, 2008. There is no indication anywhere in Defendant Mayo's records as to why the order was not followed on that date.

## XII.

Upon information and belief, Mrs. Albrecht was told to leave on May 29, 2008 and to come back the next day, as evidenced by the Emergency Department Nursing Assessment dated May 30, 2008 (8:45 a.m.), which states that Mrs. Albrecht "was walking in the subway this morning while going to her appointment, and developed increased shortness of breath with dizziness."

## XIII.

On May 30, 2008, Mrs. Albrecht was admitted to the Emergency Department at 9:15 a.m. after collapsing at the Gonda Building while she was waiting for the PE study ordered the day before. The "Diagnosis/Main complaint" lists "R/O PE [rule out pulmonary embolism]." When the CT was finally performed, it revealed large pulmonary emboli in both of the bronchial arteries.

**XIV.**

Mrs. Albrecht's respiratory status declined in the Emergency Department. She was intubated. She was admitted to the Mayo Intensive Care Unit ("MICU") for further evaluation and treatment with a Heparin infusion started in the Emergency Department. Once in the MICU, Mrs. Albrecht was unresponsive, hypotensive, and tachycardic. She became more bradycardic and went into a ventricular fibrillation rhythm. A full code was called at 12:05 p.m. Mrs. Albrecht then experienced pulseless electrical activity. She died at 12:38 p.m. Mayo did not obtain an autopsy.

**XV.**

Defendants knew or should have known that a pulmonary embolism is a medical emergency and is potentially fatal if not promptly treated.

**XVI.**

Defendants knew or should have known that the standard of care requires testing to confirm or exclude the diagnosis of pulmonary embolism as soon as possible.

**XVII.**

Defendants knew or should have known that it is imperative for patients with pulmonary embolism that effective therapy, including anticoagulation, monitoring of blood pressure and supplemental oxygen, be initiated without delay.

## XVIII.

Defendants knew or should have known, as stated in their own publication, that "[w]hen promptly diagnosed and appropriately treated, PE [pulmonary embolism] rarely causes death." *(Mayo Clin Proc* 1998;73:873.)

## XIX.

If Norma Albrecht's pulmonary embolism had been detected in a timely manner, the standard of care required immediate treatment. Had she been diagnosed and treated in a timely manner, it is more likely than not that Norma Albrecht would have survived and made a complete recovery.

## XX.

Defendant Patel and Defendant Mayo departed from accepted standards of medical practice in their care and treatment of Mrs. Albrecht. Their negligence included, but was not limited to, the following:

A. Failure to timely perform the ordered chest CT scan;

B. Failure to perform additional testing to confirm or exclude the diagnosis of pulmonary embolism, including CT-pulmonary angiography, ventilation-perfusion scan, D-dimer testing, and Duplex ultrasound of the lower extremities;

C. Failure to categorize Mrs. Albrecht as someone with a high clinical probability of pulmonary embolism, requiring an immediate diagnostic work-up for same;

D. Failure to immediately hospitalize Mrs. Albrecht on May 29, 2008 and initiate treatment including anticoagulation therapy, blood pressure monitoring and supplemental oxygen and possible thrombolysis; and

E. Defendants were in other ways negligent in their care and treatment of Mrs. Albrecht.

## XXI.

Defendants' negligence was a direct cause of Norma Albrecht's death.

## XXII.

As a direct and proximate cause of Defendants' negligence, Norma Albrecht's next-of-kin have suffered, and in the future will suffer, the loss of past and future income, farm work and household services with a present value in excess of Seventy-five Thousand Dollars ($75,000).

## XXIII.

As a direct and proximate cause of Defendants' negligence, Norma Albrecht's next-of-kin have suffered, and in the future will suffer, the loss of the advice, counsel, comfort, protection, support and companionship of the decedent.

## XXIV.

As a further direct and proximate cause of Defendants' negligence, the next-of-kin of Norma Albrecht have incurred funeral and burial expenses associated with the death of Norma Albrecht.

WHEREFORE, Plaintiff John Albrecht, as Trustee for the next-of-kin of Norma Albrecht, prays for judgment against Defendants in an amount in excess of Seventy-five Thousand Dollars ($75,000), together with costs and disbursements incurred herein, prejudgment interest, and any such other and further relief as the Court shall deem appropriate and just.

## JURY DEMAND

Plaintiff hereby requests a trial by jury, pursuant to Rule 38 of the Federal Rules of Civil Procedure, on all claims and issues so triable.

DATED:  March 23, 2011                **ROBINS, KAPLAN, MILLER & CIRESI L.L.P.**

By:      s/  Chris Messerly_____
Chris Messerly (MN #177039)
Melissa M. Wendland (MN #0349720)

2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN  55402-2015
612-349-8500

**ATTORNEYS FOR PLAINTIFF**